Date signed October 07, 2013



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Michael E. McLean, | * | Case No. | 10-30818-DK |
| | * | Chapter | 7 |
| | * | | |
| Debtor | * | | |
| ************************************** | * | | |
| Sean C. Logan, Trustee | * | | |
| | * | | |
| | * | | |
| Plaintiff | * | | |
| vs. | * | Adversary | No. 11-219 |
| Michael E. McLean, et al, | * | | |
| | * | | |
| | * | | |
| Defendants | * | | |

## OPINION

Defendant Michael E. McLean (hereinafter"Debtor") filed a voluntary Petition

commencing a Chapter 7 bankruptcy case on September 9, 2010 (the "Petition Date"). On

January 18, 2011, Creditor Airpack, Inc. ("Airpack") commenced Adversary Proceeding No. 11-

039 by the filing of a "Complaint Objecting To Discharge Of Certain Debt." That complaint

asserted that Airpack held a judgment debt against Debtor in the amount of $230,013.71 as of the

Petition Date and that Airpack was the plaintiff in a case filed on August 2, 2010 and pending in

the Circuit Court for Anne Arundel County, Maryland wherein Airpack was alleging that Debtor

and others had fraudulently transferred assets (hereinafter referred to as the "Fraudulent

Conveyance Case").[1]  The gravamen of the Fraudulent Conveyance Case was that Debtor and

the other defendants had committed fraud in transferring and hiding assets to prevent collection

by Airpack of its judgment.  In Adversary Proceeding No. 11-039, Airpack requested that the

indebtedness it asserted against Debtor in the Fraudulent Conveyance Case be found non-

dischargeable pursuant to 11 U.S.C. § 523(a)(6).[2]  However after a Motion to Dismiss was filed

by Debtor, the parties filed a Notice of Stipulated Dismissal.[3]

On March 23, 2011, the Chapter 7 Trustee commenced this adversary proceeding against

Debtor and the non-debtor defendants[4] seeking avoidance of alleged fraudulent transfers

pursuant to Section 548 and MD. ANN. CODE, COM. LAW §§ 11-504 and 11-507, turnover of

---

[1] The remaining defendants in the Fraudulent Conveyance Case are the non-debtor defendants in the instant adversary proceeding.

[2] Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

[3] In the bankruptcy case, Airpack also filed a Motion for Relief from Stay asking that it be permitted to prosecute the Fraudulent Conveyance Case in the state court.  The court denied that motion because upon the filing of a chapter 7 bankruptcy case, the right to pursue a fraudulent conveyance action belongs to the chapter 7 trustee.  11 U.S.C. §§ 323, 544(a), 548(a). *See also PW Enterprises, Inc. v. State of North Dakota, et al, (In re Racing Services),* 363 B.R. 911, 916 (8th Cir. BAP 2007)(citing, *inter alia, In re Baltimore Emergency Services II Corp.*, 432 F.3d 557 (4th Cir. 2005) and finding that absent specific finding by bankruptcy court that creditor can proceed derivatively, the authority to pursue a fraudulent conveyance action rests with the trustee).

[4] The non-debtor defendants are MacPack, LLC, MacPack of SC, LLC, Linda McLean (the Debtor's wife), Melissa Greenwell (the Debtor's daughter), Allison Davis (a former employee of MacPack, LLC), and J. Edward Martin (the Debtor's attorney).

2

property, recovery of property, as well as counts for aiding and abetting and conspiracy. Plaintiff filed an Amended Complaint on October 11, 2011 and then filed a belated Motion to Amend Complaint on October 21, 2011 that was subsequently granted by this court.  The Amended Complaint added a count requesting in the alternative that a declaratory judgment be entered determining that the allegedly fraudulently conveyed property was the Debtor's property on the Petition Date and thus is included as a part of the bankruptcy estate.  The Amended Complaint asserts that the causes of action are "core" as defined by 28 U.S.C. § 157 and the Answers filed by all defendants do not assert that any pleaded cause is non-core.  In addition, on December 13, 2012, defendants filed a Joint Line consenting to the entry of final orders and judgments by the bankruptcy court.  Also on December 13, 2012, Plaintiff filed a line consenting to the entry of final orders and judgments by the Bankruptcy Court.  To the extent that any of the pleaded causes of action are non-core, pursuant to 28 11 U.S.C. § 157(c)(2), the consent of all parties permits the entry of final orders and judgments by the bankruptcy judge.  Furthermore, this court holds that the expressed consent of all parties permits the bankruptcy judge to enter final orders and judgments in core matters that otherwise would be found to exceed the constitutional limitations on the judicial powers exercised by an "Article I judge" as enunciated by the United Supreme Court in *Stern vs. Marshall,* __ U.S. __, 131 S.Ct. 2594 (2011). Therefore orders and judgments entered by the bankruptcy court in accordance with this Opinion shall be entered as final orders and judgments.[5]

---

[5] If upon any appellate review it shall be determined that the bankruptcy judge was not permitted to enter final orders and judgments, in the alternative the findings and conclusions stated in this opinion would be intended to constitute proposed findings and conclusions under Standing Order 2012-05 of the United States District Court for the District of Maryland.

Defendants subsequently filed a Motion for Partial Summary Judgment which was granted in part and denied in part by the court by an order entered September 26, 2012.[6]  In that order, the court granted summary judgment for the defendants as to the avoidance count brought pursuant to Section 548 for all alleged transfers occurring more than two years prior to the Petition Date.  The court denied summary judgment as to all remaining causes brought by the Amended Complaint.

Trial of the adversary proceeding was conducted on March 5 and 7, 2013.  The parties subsequently submitted proposed findings and conclusions and a hearing for final argument was held on June 12, 2013, after which the court held the matter under advisement.

## I. Factual Findings

Debtor was hired by Airpack in 2002[7] after an extensive career in the freight forwarding industry.[8]  As a part of his employment, Debtor executed a non-compete agreement.  On a date sometime prior to March 2004, Debtor began his own business as a sole proprietorship using the name "MacPack."[9]  Airpack discovered the Debtor's competing business in March 2004 and terminated his employment.[10]  Debtor consulted his attorney, Defendant Joseph Edward Martin,

---

[6] The Motion for Partial Summary Judgment was brought by all defendants.  In addition to that motion, defendants Greenwell, Davis and Martin filed a Motion for Summary Judgment seeking to have the Amended Complaint dismissed in its entirety as against them.  Although the court now finds that the Amended Complaint is properly denied as to those defendants, such finding was not appropriate prior to the trial on the merits and that motion was denied on September 26, 2012.

[7] Trial Transcript March 5, 2013, p. 28, line 5.

[8] Plaintiff's Exhibit 11.

[9] Plaintiff's Exhibit 1.

[10] Plaintiff's Exhibit 3 and Trial Transcript March 5, 2013, p. 29, line 8.

4

Jr. ("Attorney Martin") in March 2004 about the non-compete clause.  Attorney Martin also

drafted documents to charter a limited liability company for Debtor under the name of MacPack,

L.L.C. ("MacPack, LLC") that were filed with the Maryland State Department of Taxation on

April 12, 2004.[11]

Airpack brought a suit in the Circuit Court for Wicomico County, Maryland, Case no. 02-

C-04-098423 against Debtor and MacPack, LLC for damages from violation of the non-compete

clause (hereinafter referred to as the "Judgment Case").  Attorney Martin represented the

defendants in that case.[12]  Judgments were entered against Debtor on April 3, 2006 and August

25, 2006, in the total amount of $153,981.[13]  When MacPack, LLC was formed its principal

member was listed as Linda McLean, the Debtor's wife and a co-defendant in the action *sub*

*judice.*[14]  A 30% interest in MacPack, LLC was held by Paul Little who it appears invested

funds.[15]  Linda McLean had little prior experience in the regulated business of freight packaging

and forwarding.[16]  Although answers to discovery in subsequent litigation with Paul Little

apparently stated that Linda McLean provided an equity injection for her ownership of the

---

[11] Defendant's Exhibit 21.

[12] Plaintiff's Exhibits 13 and 14.

[13] Plaintiff's Exhibit 15.

[14] Defendant's Exhibit 25, Bates no. 3677

[15] *Id.*

[16] *See* Joint Exhibit A, Deposition of Linda McLean, November 9, 2011, at p.49, lines 9-15 and p.50, lines 1-9.

business in the form of a customer list and conversion of loans,[17] this court finds no credible evidence of an actual investment. Her answers to questions at a deposition taken in that action demonstrate no real support for the assertion that Linda McLean provided any significant equity for her listed ownership.[18]

At the time MacPack, LLC was created, Debtor was the principal person involved in the business with the contacts, knowledge and experience to run the operation of MacPack, LLC. At times Debtor held himself out as the General Manager of MacPack, LLC.[19] However on other occasions during the protracted litigation between Airpack and Debtor, he was described as a consultant.[20] The court finds that arrangement was purposely constructed so that it would appear Debtor was not the person participating in competition with Airpack through MacPack, LLC. In addition, after some initial distributions to Debtor as a consultant, the arrangement ensured there would be no income paid in the Debtor's name[21] that Airpack, as a judgment creditor, could attach.[22]

In lieu of salary paid to Debtor, MacPack, LLC paid a salary to Linda McLean. Joanne

---

[17] *See id.* at Deposition of Linda McLean, August 23, 2010, at pp. 22-26, 38 and Deposition of Linda McLean, November 9, 2011, at pp. 57-59. *See also* Defendants' Exhibit 25, Bates no. 3677.

[18] *See generally* Joint Exhibit A, Excerpts of Deposition of Linda McLean August 23, 2010, including pp. 56-60.

[19] Plaintiff's Exhibit 7; Plaintiff's Exhibit 13, at Bates no. 2334.

[20] *See e.g.,* Joint Exhibit A, Deposition of Michael McLean, November 16, 2011, at p.66, lines 8-14; Plaintiff's Exhibit 65, Defendants' Exhibit 32 and Defendants' Exhibit 24, Bates no. 1634, 1643.

[21] Plaintiff's Exhibit 13, at Bates no. 2334.

[22] *E.g.,* Plaintiff's Exhibit 10, at Bates no. 6277.

Zenobia testified that compensation was paid to Linda McLean for the work performed by Debtor.[23]  This statement was also made by defendant Allison Davis, in an email dated April 23, 2008[24] and alluded to in an email from Paul Little dated August 31, 2007.[25]

The evidence as to the degree of involvement and work contribution provided by Linda McLean is in conflict and at different times inconsistent.  For example, witness Zenobia testified at trial in this Adversary Proceeding that Debtor was her supervisor when she worked for MacPack, LLC[26] and that Linda McLean was not substantially involved until a subsequent entity (MacPack of S.C., LLC) was formed, although Linda McLean was involved in doing accounts payable and some invoicing for MacPack, LLC.[27]

However, Ms. Zenobia was confronted on cross examination with prior inconsistent statements from a deposition in an earlier action, including statements as to who hired her and who started MacPack, LLC.  These statements were made in a deposition of Ms. Zenobia as the corporate designee of Macpack, LLC during the Judgment Case.[28]  In that deposition, Ms. Zenobia testified that it was Linda McLean who started MacPack, LLC.[29]  At the time of that deposition testimony, Airpack was asserting in the Judgment Case that the Debtor, acting

---

[23] Trial Transcript March 5, 2013, p. 96, line 14.

[24] Plaintiff's Exhibit 22 at Bates no. 1078.

[25] *Id.* at Bates no. 1164.

[26] Trial Transcript March 5, 2013, p.74, line 13.

[27] *Id.* at p.74, line 1- p.75, line 2.

[28] *See id.* at pp. 103-04.

[29] *Id.* at p.112

through MacPack, LLC, was violating the non-compete clause.  Ms. Zenobia as an employee, and at one time 1% member of MacPack, LLC, testified in a manner minimizing the Debtor's interest in MacPack, LLC.[30]  At trial in this adversary proceeding, after having severed relations with MacPack, LLC, Ms. Zenobia was willing to testify as to a far more expansive involvement by the Debtor in the business.[31]  Although the court must discount the weight to be given to Ms. Zenobia's present testimony in light of her prior inconsistent statements, the court finds that a preponderance of the evidence supports a finding that MacPack, LLC was created with Linda McLean holding approximately 97% of the ownership but actually investing no measurable equity in exchange for that holding.  The business of the prior sole proprietorship of MacPack belonging to Debtor, along with the Debtor's experience, knowledge, name recognition in the industry and associated goodwill, as well as most likely a customer list from Debtor, formed the actual contribution for the share of the business placed in the hands of Linda McLean.  Debtor received nothing of value in his own name in exchange for that value transferred by him to MacPack, LLC and to Linda McLean when MacPack, LLC was formed (hereinafter the "Initial Transfers").

The evidence also demonstrates that the business of MacPack, LLC was conducted with very significant work done by Debtor for which the company paid a salary and some profit distributions in the form of checks to Linda McLean.[32]  This misdirection of the income being received for services rendered by Debtor was a transfer of valuable rights from Debtor to Linda

---

[30] *See id.* at p.103-113.

[31] *See id.*

[32] *See* Plaintiff's Exhibit 22, Bates no. 1164.

McLean without receipt by Debtor of fair consideration or reasonably equivalent value (hereinafter the "MacPack Income Transfers").

The Initial Transfers from Debtor to MacPack, LLC and to Linda McLean could form the basis for a judgment against MacPack, LLC and Linda McLean to avoid fraudulent conveyances. In addition, the MacPack Income Transfers could form the basis for a judgment against Linda McLean for the value of the Debtor's services for which payment was made to Linda McLean. Such judgments can only be found if other elements of recoverable fraudulent conveyances are proven and no defense, such as statute of limitations, is successfully presented by the defendants.

On January 7, 2008, a new entity named MacPack of S.C., LLC ("S.C., LLC") was formed.[33]  At some point prior to October 2008,[34] differences arose between the McLeans and Paul Little.  Mr. Little questioned the accounting for income and expenses.[35]  These differences blossomed into a suit by Mr. Little against Linda McLean, Debtor and S.C., LLC, filed on June 4, 2009[36] in the Circuit Court for Baltimore County, Maryland.  According to the testimony of Linda McLean, the new entity had been formed so that Paul Little would have no interest in the packaging and crating portion of the freight forwarding.[37]  Instead, S.C., LLC absorbed a business owned and operated by Steve and Debbie Bohle that did packaging and crating.  Mr. Bohle testified that he was put in contact with Linda McLean by Debtor and dealt with Linda

---

[33] Defendant's Exhibit 34.

[34] Plaintiff's Exhibit 26.

[35] *See e.g.,* Plaintiff's Exhibit 22, Bates no. 1078/1164.

[36] Plaintiff's Exhibit 28.

[37] Joint Exhibit A, Deposition of Linda McLean, August 23, 2010, at pp. 61-62.

McLean as the owner and managing officer of S.C., LLC.[38]  In the same time frame, Linda

McLean ended her outside employment in the insurance industry.  Ms. Zenobia when testifying

as a witness for the Plaintiff in the instant adversary proceeding, stated that she saw Linda

McLean in the office more often in early 2009.[39]  S.C., LLC shared common office space with

MacPack, LLC.[40]  Steve Bohle testified extensively concerning Linda McLean's activities as

manager of S.C., LLC.  These duties included approving financial expenditures and business

management , including "cutting" checks approving new contracts, including credit decisions for

new customers.[41]  Mr. Bohle and Mrs. Bohle operated independently as to the work performed.[42]

Mr. Bohle testified that his wife performed duties of an "inside operations manager," managing

the labor force, preparing invoices, handling accounts receivable and purchasing supplies for

building crates[43] and he handled sales.[44]   After its creation, Linda McLean received a salary

from S.C., LLC but Debtor did not.[45]  MacPack, LLC continued to handle all packaging of

hazardous material.[46]  After the creation of S.C., LLC, Linda McLean received regular

---

[38] Trial Transcript March 5, 2013, at p.121, lines 9-13.

[39] *Id.* at p.83, line 15.

[40] Joint Exhibit A, Deposition of Linda McLean, August 23, 2010, at p.63, line 12.

[41] *Id.* at pp.178-81.

[42] *Id.* at p.183, lines 2-13; p.121, lines 9-10.

[43] *Id.* at p.120, lines 2-12.

[44] *Id.* at p.119, lines 18-23.

[45] Joint Exhibit A, Deposition of Linda McLean, August 23, 2010, at pp. 69-71;
Plaintiff's Exhibit 70.

[46] *Id.* at p.188, lines 3-6.

10

distributions and/or salary from both MacPack, LLC and S.C., LLC.[47]

## II.  Analysis

### A.  Counts I, II and IV  - Fraudulent Conveyance and Recovery

Plaintiff's Count I is brought under Section 548(a)(1) and requests the court to avoid transfers (1) of the South Carolina property from Debtor to MacPack, LLC; (2) of ownership of MacPack and MacPack of SC from Debtor to Linda McLean; (3) of profit distributions from MacPack, LLC and S.C., LLC to Linda McLean; and (4) of wages paid to Linda McLean (specified only as the Debtor's wages, but no amount provided) by MacPack, LLC and S.C., LLC.  Plaintiff asks for reconveyance of property to Debtor or a judgment against MacPack, LLC, S.C., LLC and Linda McLean in the amount of $500,000.  In Count II, Plaintiff seeks avoidance of the same transfers pursuant to state fraudulent conveyance law set forth in MD. CODE ANN. COM. LAW §§ 15-204 and 15-207.

The court finds from the evidence that Plaintiff has proven by the preponderance standard[48] that the initial creation of MacPack, LLC using the assets of Debtor but registering the ownership of that entity in the name of Linda McLean was an intentional act to defraud creditor Airpack by a transfer of the Debtor's assets into MacPack, LLC.  Plaintiff has also proven that the transfer of assets into MacPack, LLC in 2005 was a transfer for which no fair consideration was provided to Debtor and that Debtor was left insolvent.  Similarly, the shifting of ownership in the business of MacPack, LLC from Debtor to Linda McLean would constitute an avoidable

---

[47] Plaintiff's Exhibits 69-71.

[48] *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991).  *See also In re Goldschein*, 241 B.R. 370, 377-78 (Bankr. Md. 1999).

fraudulent conveyance of the value of the business (at the time of the creation of MacPack, LLC). Under both Section 548 and MD. CODE ANN. COM. LAW §§ 15-204 and 15-207, Plaintiff has therefore proven a *prima facie* case as to avoidance of the Initial Transfers. The court also finds that salaries and distributions of profit made to Linda McLean by MacPack, LLC for the work done by the Debtor (who at times described the salary as his)[49] form the legal basis for avoiding the MacPack Income Transfers to Linda McLean.[50]

Despite this finding of evidence of avoidable fraudulent conveyances, in its Order granting partial summary judgment entered September 26, 2012, the court was compelled to find in favor of defendants as to all avoidances under Section 548(a)(1) that occurred more than two years prior to petition.[51] This included the transfer of ownership of MacPack, LLC and S.C., LLC to Linda McLean and all pre-September 9, 2008 salary and profit distributions by those entities to Linda McLean. The court now finds that the post-September 9, 2008 MacPack Income Transfers to Linda McLean are avoidable pursuant to Section 548(a) and recoverable from Linda McLean under Section 550.

The court, however, declined to make a finding on summary judgment as to Count II brought under MD. CODE ANN. COM. LAW §§ 15-204 and 15-207 for conveyances which

---

[49] Plaintiff's Exh. 22, at 560, 1163.

[50] *See generally Cardiello v. Arbogast (In re Arbogast)*, 466 B.R. 287, 300-01 (Bankr. W.D.Pa. 2012) (court found fraudulent conveyance where debtor caused wages to be direct deposited into account maintained with wife as tenants by the entireties).

[51] Section 548 limits the avoidance of a fraudulent transfer to those transfers occurring within two years of the petition date.

occurred more than three years[52] prior to the Petition Date[53] because there was a material dispute

of fact as to the Plaintiff's argument that the three year statute of limitations does not bar

recovery.  Airpack asserted that it did not learn of the fraudulent conveyance scheme until

sometime in 2010 during the course of the Paul Little litigation and within the state law

limitations periods.  Plaintiff renewed this argument at trial.  In essence, Plaintiff requests this

court to invoke what is commonly known as the "discovery rule."  The discovery rule exists in

both Maryland statutory and common law.

       What is known as the "fraud discovery exception" is codified at MD. CODE ANN. CTS. &

JUD. PROC. § 5-203.  That Section provides: "If the knowledge of a cause of action is kept from a

party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time

when the party discovered, or by the exercise of ordinary diligence should have discovered the

fraud."  Although Plaintiff alleges that the underlying conveyances were done with fraudulent

intent and constituted fraud as against Airpack, the record does not support a finding that

---

[52] Where a trustee asserts claims under state law pursuant to Section 544(b), the state law statute of limitations will apply.  *E.g., In re Simpson*, 334 B.R. 298, 304 (Bankr. D. Mass. 2005).  In Maryland, the statute of limitations for fraudulent conveyance is set forth in MD. CODE ANN., CTS. & JUD. PROC. § 5-101 which provides: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

[53] The Petition Date is ordinarily the proper date for application of the state law statute of limitations.  The trustee is required to file an action for avoidance within two years of appointment pursuant to Section 546(a), however, even if the trustee does not initiate the adversary proceeding seeking avoidance of transfers until a date between the petition date and the two year deadline applicable by Section 546(a), transfers made within three years of the petition date are within the statute of limitations.  *E.g., In re Dry Wall Supply, Inc.*, 111 B.R. 933, 936  (D.Colo.1990).
       However, *see infra* fn 55*,* Airpack had initiated a fraudulent conveyance action against Debtor a month prior to the Petition Date and that earlier date is the starting point of the limitations period.

defendants took fraudulent measures to conceal the transfers from Airpack. The creation of

MacPack, LLC as solely owned by Linda was never concealed or denied.  Even if this court were

to find that the defendants fraudulently concealed the transfers to Linda McLean, for the same

reasons discussed *supra*, the court finds that Airpack (in whose "shoes" Trustee now appears as

Plaintiff) by exercise of ordinary diligence should have discovered the fraudulent conveyances.

Therefore, the cause of action accrued at the time of the transfers.

The common law "discovery rule" is recognized in Maryland law and is different than

the statutory "fraud discovery exception."  The operation of the common law discovery rule is to

effectively toll a limitations period where a plaintiff does not or can not discover that the wrong

has occurred until sometime after the wrong is committed.  Stated conversely "a cause of action

accrues when a plaintiff in fact knows or reasonably should know of the wrong."  *Hecht v.

Resolution Trust Co.*, 333 Md. 324, 336, 635 A.2d 394, 399 (1994)(citing *Poffenberger v. Risser,*

290 Md. At 636, 431 A.2d 677 (1981)).  In the instant adversary proceeding, Plaintiff argues that

the limitations period should be found to have been tolled from the period of the conveyances to

2010.[54]  The evidence, however, does not support such a finding.[55]  Instead, the court finds that

---

[54] As recognized in *In re Bernard L. Madoff Investment Securities LLC*, 445 B.R. 206 (Bankr. S.D.N.Y. 2011), applying a similar New York discovery rule, a trustee proceeding under Section 544 can take advantage of the discovery rule if the fraud was "(1) not discovered, and could not have been discovered with reasonable diligence, by at least one unsecured creditor; or (2) was only discovered, and could have only been discovered with reasonable diligence, by at least one unsecured creditor within two years of the Filing Date."  *Id.* at 232.

[55] A trustee gains only what right an unsecured creditor would have on the date of petition.  Because the court finds that the statute of limitations had run as to any transfer which occurred more than three years prior to the filing of the state court action (August 2, 2010), Plaintiff acquires no greater right to maintain an avoidance for transfers beyond the period of time.  *Cardiello v. Arbogast (In re Arbogast)*, 466 B.R. 287, 300-01 (Bankr. W.D.Pa. 2012).  *See also Bergquist v. Vista Development, Inc. (In re Quality Pontiac Buick GMC Truck, Inc.)*,

Airpack had sufficient information available as of April 3, 2006 to be aware of the ownership of MacPack, LLC and the use of that structure to try to place the assets of MacPack, LLC and income earned by Debtor through MacPack, LLC beyond the reach of Airpack as a creditor.[56] Not only was the corporate structure of MacPack, LLC discoverable to Airpack in its litigation proceedings and post-judgment collection efforts,[57] but Plaintiff's counsel in argument acknowledged that Airpack received information regarding Linda McLean's ownership of MacPack, LLC and chose not to believe it.[58]

Accordingly, the court does not find that a statutory or common law "discovery rule" would operate to toll the statute of limitations thereby allowing the Plaintiff trustee to reach transfers beyond the applicable statutes of limitations. The court concludes that transfers

---

222 B.R. 865, 869 (Bankr. D. Minn. 1998); *Bay State Milling Co. v. Martin (In re Martin)*, 142 B.R. 260 (Bankr. N.D.Ill. 1992).

[56]  The court *infra* has held that the transfer of property to S.C., LLC which occurred in 2008 and from S.C., LLC to Linda McLean did not constitute an avoidable transfer so it is not necessary to determine the applicable statute of limitations date.

[57]  Plaintiff produced an exhibit which he has identified as MacPack LLC's Supplemental Answers to Interrogatories from the Judgment Case. Plaintiff's Exhibit 14. That document provides that Linda McLean provided information relevant to the answers (Supplemental Answer No. 1), that Michael McLean became a consultant to MacPack, LLC at the request of Linda McLean (Supplemental Answer No. 7) and further, though unsigned for reasons unknown to the court, the prepared signature line identifies Linda McLean as the majority owner of MacPack, LLC.
  On cross examination at trial, counsel for Debtor provided Ms. Zenobia with a copy of a deposition transcript from March 20, 2006 during which deposition she testified as the corporate designee for MacPack, LLC in the Judgment Case. Those excerpts revealed a pattern of questions and answers between Zenobia and Airpack's counsel wherein Zenobia referenced the ownership by Linda McLean and that Linda McLean had hired her. Trial Transcript March 5, 2013, at pp. 106-109.

[58] Trial Transcript March 7, 2013, at p. 142, line 23- p.143, line 4 ("[The allegation] was made during the Airpack case sometime in 2006, but it was not believed by Airpack at the time because obviously Michael McLean was running the company.")

occurring prior to August 2, 2007[59] (the "Limitations Date") cannot be avoided in this adversary proceeding as a result of the application of the Maryland statute of limitations.

As to the MacPack Income Transfers paid to Linda McLean by MacPack, LLC, the Court finds that such income payments were an intentional misdirection of payment for the services and expertise of Debtor and as such are a transfer by Debtor to Linda McLean of the Debtor's right to receive the income and distributions.  The evidence supports a finding that these transfers, as each income and distribution payment was made, were made to "hinder, delay, or defraud present or future creditors" and are thus avoidable pursuant to MD. CODE ANN. COM. LAW § 15-207 to the extent they occurred after the Limitations Date.[60]  The court finds that the transferee, Linda McLean knew of the fraudulent nature of the transfer and participated with requisite intent.  Such knowledge and intent are necessary elements for a finding under that Section.  *See Berger v. Hi-Gear Tire and Auto Supply, Inc.* 257 Md. 470, 475, 263 A.2d 507, 510 (1970)("Even if the grantor has a fraudulent intent, this will not vitiate or impair a conveyance unless the grantee participates in the fraudulent intent.").  Consequently the court concludes that the amount of such transfers is avoidable pursuant to Section 544(b) and the Maryland Uniform Fraudulent Conveyance Act and recoverable by judgment against the transferee, Linda McLean, pursuant to Section 550.  In reaching this conclusion, the court finds without credibility the explanations of Linda McLean as to the amount, nature, and value of alleged work that

---

[59] The Fraudulent Conveyance Action was filed by Airpack in state court on August 2, 2010.  *See fn* 55.

[60] Section 15-207 of the Commercial Law Article of the Maryland Annotated Code provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors."

defendants assert she performed for MacPack, LLC and the argument that the income she received was for her services. The evidence instead demonstrates by a preponderance that all income and distribution payments were recompense for the Debtor's work.

In addition, the above-discussed MacPack Income Transfers are avoidable pursuant to Section 544(b) and MD. CODE ANN. COM. LAW § 15-204.[61] The evidence is devoid of any fair consideration provided by Linda McLean to Debtor for the MacPack Income Transfers. Circumstantial evidence supports a finding that at the time of the transfers, Michael McLean was insolvent, particularly in light of the judgment liabilities against him entered in the Judgment Case. Furthermore where a transfer is demonstrated to have been made without fair consideration, and the transfer is sought to be avoided because the transferor was insolvent, the burden of proving the transferor was neither insolvent, nor rendered insolvent at the time of the transfer is upon the party seeking to uphold the transfer.[62] No evidence supporting a finding of solvency was received, nor argument for such a finding made. In fact Debtor had intentionally rendered himself insolvent as a means of thwarting collection by Airpack of its judgment.

Plaintiff asserts that the same fraudulent transfers occurred as a result of the formation of S.C., LLC and income paid by S.C., LLC to Linda McLean. S.C., LLC was formed after the Limitations Date and therefore avoidance under the causes of action prayed by Count II of the

---

[61] This Section of the Maryland Code provides: "Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." MD. CODE ANN. COM. LAW § 15-204

[62] *Lacey vs. Van Royen*, 259 Md. 80, 93-94, 267 A.2d 91, 98 (1970)(discussing Section 4 of Article 39B of the Annotated Code of Maryland, now codified in MD. CODE ANN. COM. LAW §§ 15-204).

Amended Complaint are not barred by the Maryland statute of limitations.[63]  Nevertheless, the court finds insufficient evidence to support a finding that fraudulent conveyances from Debtor to others were made as a result of the creation of S.C., LLC or by reason of the income payments made by S.C., LLC to Linda McLean.  Here the evidence of Linda McLean's efforts in managing aspects of the business of S.C., LLC and the facts surrounding this LLC'S formation and operation do not demonstrate by a preponderance of the evidence that Debtor made a transfer into S.C., LLC or to Linda McLean at its formation, nor that income paid by S.C., LLC to Linda McLean was not for her efforts but rather a misdirection of income due to Debtor.

S.C., LLC was formed to separate the hazardous materials packaging business retained by MacPack, LLC from other packing and freight forwarding to be done by S.C., LLC.[64]  There is no evidence that Debtor conveyed something to S.C., LLC at that time.  Furthermore, S.C., LLC absorbed the business of Steve Bohle and was thereafter carried forward through the Bohles' operational efforts with Linda McLean handling accounts payable and receivable functions as well as credit approval and contract approval.[65]  From this evidence the court cannot find as a fact that the income paid to Linda McLean by S.C., LLC was misdirected funds actually earned by Debtor.  For these reasons the Plaintiff's demand in Counts I and II that the court find a avoidable fraudulent transfers by Debtor from the activities of S.C., LLC will be denied.

The Amended Complaint also sought avoidance of a March 17, 2009 transfer of real

---

[63] The court previously ruled in the Order granting partial summary judgment that as to Count I (Section 548), the statute of limitations would bar recovery of any avoidable transfers occurring prior to two years prior to the Petition Date. *See supra* fn 51 and accompanying text.

[64] Joint Exhibit A, Deposition of Linda McLean, August 23, 2013, at pp. 61-62.

[65] *See supra* fn. 41-44 and accompanying text.

property located in South Carolina (the "S.C. Property") from Debtor and Linda McLean to MacPack, LLC. This transfer occurred within both the two year and three year statutes of limitations and is not subject to the statute of limitations defense raised by Defendants. However in argument before the court, Plaintiff's counsel effectively abandoned any request to find the transfer avoidable. Plaintiff's counsel explained that discovery had revealed that the S.C. Property was heavily mortgaged and so no evidence was presented during trial as to the net value of the property. The court, therefore, concludes that there is insufficient evidence upon which the court could determine the transfer of the S.C. Property to be avoidable.

**B. Counts III and VII  - Turnover and Declaratory Judgment**

The court also must deny the Plaintiff's alternative argument in Count VII of the Amended Complaint that the businesses were and remain owned by the Debtor and that the court should enter a declaratory judgment so stating. Although in closing argument, counsel for Plaintiff stated that this is the Plaintiff's primary position with the assertion that the businesses were fraudulently transferred being an alternative, the court notes that the count for declaratory judgment was added by the Amended Complaint filed after defendants raised the statute of limitations defenses to the fraudulent conveyance counts. Simply put, the evidence does not support that either business was owned by Debtor at the time of the Petition Date.

Having denied the declaratory judgment requested by Count VII, the action for turnover in Count III must similarly be denied. The ownership of the business and income paid to Linda McLean by the businesses were not property of the estate on the date of petition.

**C. Counts V and VI- Civil Conspiracy and Aiding and Abetting**

In Count V, Plaintiff alleges a civil conspiracy of a fraudulent transfer of property. To

support such a claim, Plaintiff is required to demonstrate an agreement between the involved

parties.  A cause of action for civil conspiracy was defined in Maryland as "a combination of two

or more persons by an agreement or understanding to accomplish an unlawful act or to use

unlawful means to accomplish an act not in itself illegal, with the further requirement that the act

or the means employed must result in damages to the plaintiff."  *Hoffman v. Stamper*, 385 Md. 1,

24, 87 A.2d 276, 290 (2005).  In *In re Rood*, 459 B.R. 581, 603-04 (Bankr. D. Md. 2011), this

court (P. Mannes), held that the tortious conduct of an underlying fraudulent transfer was

sufficient to find a civil conspiracy where the court also found an agreement or meeting of the

minds to accomplish such fraudulent conveyance.  *Id.*  Such a finding that civil conspiracy would

lie was upheld by the District Court in 482 B.R. 132, 143 (D.Md. 2012)(D. Chasanow).

The *Rood* case, like the instant case, also involved an allegation of aider and abettor

liability.  459 B.R. at 604.  The court held that such liability is established if "(1) there is a

violation of the law by the principal, (2) defendant knew about the violation, and (3) the

defendant gave substantial assistance or encouragement to the principal to engage in the tortious

conduct."  *Id.* (citing *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 340 Md. 176, 665

A.2d 1038 (Md. 1995) and *Christian v. Minn. Mining & Mfg Co.,* 126 F.Supp.2d 951, 960

(D.Md.2001).

In the Order Denying Motion of Defendants Melissa Greenwell, Attorney Martin and

Allison Davis for Summary Judgment, entered on September 26, 2012, the court held that upon

their motion for summary judgment, it was defendants who must prove by evidence the non-

existence of the claims brought against them and that the "Defendants' evidence does not

entirely refute their possible participation, knowledge and encouragement in one or all

(depending on which Defendant of these alleged fraudulent transfers)."[66]  However, at trial it was Plaintiff who had the burden of proving defendants acted in a manner satisfying the elements of the causes of action brought against them.  Plaintiff did not meet this burden with respect to defendants Greenwell, Attorney Martin and Davis.  Plaintiff's evidence against Greenwell, Attorney Martin and Davis at trial consisted largely of documentary exhibits, in particular deposition transcripts.  The court has spent considerable time reviewing the allegations and the exhibits after completion of the courtroom phase of the trial.

As to Greenwell and Davis, the exhibits could lead the court to find that they were aware that the Debtor's role in MacPack, LLC was greater than that which he now claims and similarly that Linda McLean's role was smaller.  However, evidencing a degree of awareness by Greenwell and Davis' of their co-defendants' business efforts does not satisfy the Plaintiff's burden to prove both an awareness that such acts were being done for a tortious purpose and that Greenwell and Davis participated in the scheme.

Plaintiff argues that as the Debtor's attorney, Attorney Martin was in the position of collaborating with Debtor to create the scheme and effectuate the fraudulent conveyances.  The evidence that Plaintiff asserts supports such a finding is Attorney Martin's role in preparing business documents with respect to the creation of MacPack, LLC, the sanction entered against him for a discovery violation during the Fraudulent Conveyance Case and statements made by Attorney Martin which at most demonstrate that he was aware of the fraudulent conveyance scheme.  The evidence is not in dispute that Attorney Martin prepared and filed the paperwork to form MacPack, LLC, which creation is found to be a fraudulent conveyance- though unavoidable

---

[66] Order entered September 26, 2012, at p.4.

21

for reasons of statute of limitations.  However, Plaintiff has not demonstrated that Attorney Martin advised or participated with Debtor to adopt the ultimate scheme of creating the corporation in Linda McLean's name and paying his salary to her in order to avoid Airpack's collection efforts.

As explained in the decision of *Fraidin, et al. v. Weitzman, et al.,* 93 Md.App. 168 (611 A.2d 104 (Md.App.1992), an attorney will not be found liable for a conspiracy where the conduct of the attorney was within the scope of employment.  *Id.* at 234-35, 611 A.2d at 1079-80.  Further, the Plaintiff has not demonstrated by any evidence that Attorney Martin's services to Debtor were undertaken to either benefit himself or injure another.  *Id.* at 235-236, 611 A.2d at 1079-80.  As the *Fraidin* Court pointed out, there is a distinction between "commit[ing] fraud or collusion, or a malicious or tortious act, even if doing so is for the benefit of the client. . . [and] mere participation in acts which subsequently make possible the alleged fraud."  *Id.* at 236-37; 611 A.2d at 1080.

The court cannot conclude that Plaintiff has proven by a preponderance of the evidence that Greenwell, Attorney Martin or Davis conspired with each other or with Michael and Linda McLean to commit tortious acts, or that any of the defendants aided and abetted Michael and Linda McLean with those acts.  The court finds that Plaintiff presented insufficient evidence to prove liability against Greenwell, Attorney Martin or Davis under Counts V and VI of the Amended Complaint.

### III. Judgment

Having found that the MacPack, LLC Income Transfers occurring after the Limitations Date are fraudulent conveyances that are avoidable as against Linda McLean, the court must

determine the amount of the consequent judgment to be entered.  Plaintiff's Exhibit 69 is a voluminous copy of paystubs demonstrating amounts paid to Linda McLean by MacPack, LLC. Plaintiff did not provide a summary or computation as to the aggregate amounts stated in this evidence.  Therefore in its order determining certain MacPack Income Transfers to be avoided, the court will require that Plaintiff file a detailed summary and computation of the MacPack Income Transfers occurring after the Limitations Date as evidenced by Exhibit 69.  The court will enter a money judgment in favor of Plaintiff and against Linda McLean after receipt and review of the required summary and computation.

These are the findings and conclusions of the court.  An order and judgment will be entered in accordance with this Opinion.

**End of Opinion**